# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                                       **Case No. 05-CR-305**

**ART WILLIAMS**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Art Williams pleaded guilty to possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g), and distributing less than five grams of crack cocaine, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). The probation office prepared a pre-sentence report ("PSR"), which set defendant's offense level at 25[1] and his criminal history category at IV, producing an imprisonment range of 84-105 months under the advisory sentencing guidelines. However, because defendant had previously been convicted of two crimes of violence, the PSR designated him a career offender under U.S.S.G. § 4B1.1,[2] which increased his imprisonment

---

[1] The felon in possession count produced an offense level of 28 (base level 24 based on two previous convictions for crimes of violence, U.S.S.G. § 2K2.1(a)(2), plus 4 because defendant possessed the gun in connection with another felony offense, § 2K2.1(b)(6), to wit crack distribution). The crack distribution count produced an offense level of 14 (base level 12, U.S.S.G. § 2D1.1(c)(14), plus 2 based on firearm possession, § 2D1.1(b)(1)). The two counts were grouped under U.S.S.G. § 3D1.2(c), then 3 levels subtracted for acceptance of responsibility, § 3E1.1, for an adjusted level of 25.

[2] Under § 4B1.1, "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." In the present case, "the instant offense" qualifying defendant as a career offender was crack distribution.

range to 151-188 months.[3]

Neither side objected to the PSR, but defendant requested a non-guideline sentence of 84 months, while the government advocated a term at the high end of the advisory range. Upon consideration of all of the factors set forth in 18 U.S.C. § 3553(a), I imposed a sentence of 120 months.

## I. SENTENCING FACTORS

In imposing sentence, the court must consider the factors set forth in § 3553(a), which include:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the advisory guideline range;

(5)  any pertinent policy statements issued by the Sentencing Commission;

(6)  the need to avoid unwarranted sentence disparities; and

---

[3]Because the statutory maximum for crack distribution under 21 U.S.C. § 841(b)(1)(C) is 20 years, the base offense level under U.S.S.G. § 4B1.1(b) was 32, minus 3 for acceptance of responsibility, § 3E1.1, producing a final offense level of 29. The criminal history category for a career offender is always VI. § 4B1.1(b).

2

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in sub-section (a)(2).

## II.  DISCUSSION

### A.     Nature of Offenses

Defendant sold .2 grams of crack cocaine to an undercover police officer for $20. He was later stopped and arrested, and officers found a loaded handgun in the glove box of the car in which he was riding. Crack distribution and firearm possession are obviously serious crimes. However, in the present case, the amount of crack involved was slight, and defendant did not actively employ the gun. Thus, the offenses, while serious, were not at all aggravated.

### B.     Character of Defendant

Defendant was thirty-two years old and had a very serious record. As a juvenile, he was adjudicated delinquent for delivering cocaine and recklessly using a weapon, the latter case arising out of an incident in which he shot into the home of some people he thought got him evicted from his residence. In 1993, when he was nineteen, defendant was convicted of second degree reckless injury arising out of an incident in which he severely beat another man with a baseball bat, causing a fracture to the victim's right eye orbit, a broken nose, broken cheekbone and several knocked-out teeth. Despite the severity of the beating, a state court judge placed defendant on probation, which was later revoked based on his 1995 convictions of false imprisonment and felon in possession of a firearm. The 1995 offenses involved defendant abducting the victim – who apparently owed him $10 – off the street at gun point.

3

He then held the man for several hours and threatened to kill him, pointing the gun at his head, chest and knees, while demanding money. Eventually police arrived and defendant fled. Defendant received a total of four years in prison for those offenses and was released on parole in 1999.[4] However, his parole was later revoked based on violations including drug use, failure to pay restitution and absconding. He discharged on those cases in June 2002. Finally, in February 2005, he was convicted of marijuana possession in municipal court.

Defendant's brushes with the law followed a rough childhood and adolescence. His parents did not care for him, and he bounced around from place to place. He dropped out of high school, had little verifiable employment history, and regularly used marijuana and cocaine. To his credit, he told the PSR writer that he wanted to obtain treatment and get his HSED. Further, during his allocution, defendant showed some insight into his situation and stated that upon his release he wanted to counsel other young men to avoid the mistakes he had made. The probation officer indicated that defendant was an intelligent man, and I was left with the same impression. This was not a person without potential, if he applied himself positively.

**C.    Purposes of Sentencing**

Defendant presented some risk of recidivism given his record. Perhaps that risk was decreasing as he aged, but it was a bit too soon to make that finding. I also had to impose a substantial period of confinement to promote respect for law and deter others. Defendant's correctional needs included drug treatment and educational development.

---

[4]The 1993 reckless injury and 1995 false imprisonment offenses served as career offender predicates under U.S.S.G. §§ 4B1.1 & 4B1.2(a).

4

**D.     Consideration of Guidelines**

The guidelines called for a term of 151-188 months. Defendant argued for a below-guideline sentence of 84 months, the low end of what the range would have been absent the career offender designation. In support of his contention, he pointed to his stale criminal history, rough childhood and substance abuse problems.

As defendant noted, he was convicted of no new crimes between 1995 and 2005. However, this was not as significant as it at first seemed, since he was in custody for a much of that time. Defendant was initially released from prison in 1999, revoked in 2001, then discharged in June 2002. He committed the instant offenses in August of 2005, about three years later. Thus, there was no significant break in his criminality. Further, defendant's prior offenses were, as discussed above, extremely violent and worrisome. This was not a case, like some I have seen, in which the career offender predicates really did not demonstrate the type of danger justifying the severe sentences recommended under that guideline. See United States v. Fernandez, 436 F. Supp. 2d 983, 988-90 (E.D. Wis. 2006) (discussing situations in which career offender guideline produces sentences greater than necessary).

I agreed that defendant's childhood was unpleasant, and that he had substance abuse issues. However, defendant did not really tie either of these facts to the § 3553(a)(2) purposes. For instance, there was no evidence that defendant was drawn into crack dealing based on addiction, such that treatment would reduce the likelihood that he would re-offend.

Therefore, the proposed defense sentence was insufficient to protect the public and deter. Nevertheless, I did believe that a sentence a bit below the range was sufficient given the nature of the specific offenses of conviction. The instant offenses were not so severe that a term approaching 15 years, as the government advocated, was necessary to provide just

5

punishment. Defendant sold .2 grams of crack for just $20 and possessed a firearm, which he did not use in any way. The amount of crack involved placed him at the very lowest level for that substance under U.S.S.G. § 2D1.1(c). Because the guidelines recommended a sentence somewhat greater than necessary to provide just punishment for these specific offenses,[5] see § 3553(a)(2)(A), and because a sentence a bit below the guideline range would still satisfy the needs for incapacitation and deterrence, see §§ 3553(a)(2)(B) & (C), I elected to impose a non-guideline sentence.

### III. CONCLUSION

Under all of the circumstances, I found a sentence of 120 months sufficient but not greater than necessary to satisfy all of the purposes of sentencing. This sentence incapacitated defendant for a term sufficient to protect the public, while recognizing the somewhat mitigated nature of the specific offenses of conviction. Further, because the sentence was more than twice as long as any previous period of confinement, it was sufficient to deter him from re-offending. Finally, because the sentence was based on the particular facts of the case as they related to the § 3553(a)(2) purposes and did not, in any event, vary greatly from the guidelines, it did not create unwarranted disparity. See § 3553(a)(6).

Therefore, I committed defendant to the custody of the Bureau of Prisons for 120 months on both counts to run concurrently, with recommendations that he participate in drug

---

[5] Section 4B1.1 ties the base offense level in career offender cases to the statutory maximum for the offense of conviction, here, crack distribution. The drug distribution statute, 21 U.S.C. § 841(b), also ties the statutory maximum to the amount of controlled substance involved. Thus, § 4B1.1 does to some extent provide for graduated punishments based on the amount of drugs involved in the instant offense of conviction. However, in this case, the amount defendant distributed – .2 grams – was far below the 5 grams necessary to trigger an increase in the statutory maximum and, thus, the offense level under § 4B1.1. Therefore, in the present case the guidelines did not really take into account the minuscule amount involved.

6

treatment and educational programming, followed by three years of supervised release, with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 17th day of April, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge